**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5940-17T4

MARIANO VEGA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued August 5, 2019 – Decided  February 20, 2020

Before Judges Sabatino, Rose and Mitterhoff.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 808312.

Thomas J. Cammarata argued the cause for appellant (Cammarata, Nulty & Garrigan, LLC, attorneys for appellant; Thomas J. Cammarata, on the briefs).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Robert S. Garrison, Jr., Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MITTERHOFF, J.A.D.

Mariano Vega appeals from the July 20, 2018 final administrative determination of the Board of Trustees of the Public Employees' Retirement System (the Board), which ordered the total forfeiture of benefits he earned as a member of the Public Employees' Retirement System (PERS). While employed by both the City of Jersey City (Jersey City) and Hudson County, Vega accepted campaign contributions in exchange for influencing government matters in his capacity as City Council President in Jersey City. As a result of these acts, Vega pled guilty in federal court to "[c]onspiracy to obstruct interstate commerce by extortion under color of official right." 18 U.S.C. § 1951(a).

After serving a thirty-month sentence, Vega applied for service benefits through PERS, but the Board denied his application, reasoning that N.J.S.A. 43:1-3.1 mandated total forfeiture of his benefits. Relying on State v. Steele, 420 N.J. Super. 129 (App. Div. 2011), the Administrative Law Judge (ALJ) reversed the Board's decision in part, ordering it to grant Vega the benefits he earned by virtue of his Hudson County employment. The Board reviewed the

ALJ's decision and rejected his interpretation of <u>Steele</u>, thus reaffirming its initial decision ordering total forfeiture of Vega's benefits.

Having considered the parties' interpretations of <u>Steele</u>, we conclude that <u>Steele</u> does not mandate total forfeiture of Vega's benefits. N.J.S.A. 43:1-3(b) provides for full or partial forfeiture "of the earned service credit or pension or retirement benefit" where appropriate, but the Board declined to weigh the statutory factors. <u>See also</u> N.J.S.A. 43:1-3(c) ("In evaluating a member's misconduct to determine . . . whether forfeiture or partial forfeiture . . . is appropriate, the board of trustees shall consider and balance [eleven] factors[.]"). Accordingly, we vacate the Board's decision in part and remand for consideration, under N.J.S.A. 43:1-3 only, of whether all or any portion of the benefits Vega earned from his Hudson County employment should be withheld.

We recite the following facts from the record. Starting in August 1988, Vega was employed by Hudson County in various capacities, including Chief of Social Services, Director of the Department of Public Resources, and finally, beginning in 2005, Director of the Department of Parks, Engineering, and Planning. While employed by Hudson County, he was enrolled in PERS. In July 1997, he became a multiple member of PERS after he was elected to the position of councilman in Jersey City.

A-5940-17T4

From March 2009 through July 2009, while running for re-election for his Jersey City council seat, Vega met with an individual who, unbeknownst to him, was an undercover informant. During their meetings, Vega agreed to accept illegal campaign contributions from the informant in exchange for his assistance in obtaining government approval for proposed real estate investments in Jersey City. Although Vega never acted on his promises, the informant sent him payments totaling $20,000. Using "straw donors," Vega "unlawfully convert[ed] corrupt cash payments received from [the informant] into illegal political contributions . . . by submitting and causing to be submitted, materially false campaign finance reports."

On May 26, 2010, Vega pled guilty in federal court to "[c]onspiracy to obstruct interstate commerce by extortion under color of official right." 18 U.S.C. § 1951(a). He admitted that he had "conspired to accept and accepted corrupt payments from an individual, with consent in exchange for Vega's official action and influence as the City Council President for the Municipal Council of Jersey City, or for making false statements to agents of the United States Government." Consequently, he resigned from his Jersey City position on September 13, 2010, and he was terminated from his Hudson County position

on September 15, 2010. A few months later, he was served with a judgment and order of forfeiture, barring him from future public employment.

On April 11, 2011, a judgment of conviction was entered in the United States District Court for the District of New Jersey. Vega was sentenced to thirty months' imprisonment and two years' supervised release. He was also ordered to forfeit the $20,000 he received and to pay a $1000 fine.

On October 28, 2014, at the age of sixty-five, Vega applied for service retirement benefits through PERS. The Board considered Vega's application at its December 14, 2016 meeting and, thereafter, issued a letter denying his application. It considered the factors set forth in Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62, 77-78 (1982), and codified at N.J.S.A. 43:1-3(c), (the Uricoli factors) and reasoned that because Vega had been "convicted of a crime that was directly related to his public position, and the crime is substantially similar to an enumerated offense outlined in N.J.S.A. 43:1-3.1[,] . . . any and all pension benefits resultant from . . . Vega's PERS membership [are] subject to total forfeiture."

Vega appealed the Board's decision and requested a hearing before the Office of Administrative Law (OAL), contesting the forfeiture of the benefits he earned through his Hudson County employment because the crime to which he

pled guilty only related to his Jersey City employment. The Board granted Vega's request, and the OAL assigned the matter to ALJ Julio C. Morejon, who held the hearing on July 12, 2017. In an April 17, 2018 written decision, ALJ Morejon reversed the Board's decision and ordered it to grant Vega the benefits he earned from his Hudson County employment. The ALJ found that the Board's "Uricoli analysis was not central in its decision." He then considered our holding in Steele and determined that it required reversal of the Board's decision.

The Board reviewed the ALJ's decision at its June 20, 2018 meeting, and on July 20, 2018, it issued a final administrative determination reversing it. The Board rejected the ALJ's interpretation of Steele, concluding that Steele supported the total forfeiture of Vega's PERS benefits. This appeal ensued.

On appeal, Vega contends that the Board erred in ordering total forfeiture of his retirement benefits because it gave no weight to the fact that his conviction did not involve his Hudson County employment. Additionally, he contends that the Board's Uricoli analysis resulted in a decision that was arbitrary, capricious, and unreasonable.

Our review of an administrative agency's final decision is limited, and we will only reverse if "there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs.,

Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). When reviewing administrative sanctions, we may reverse where the "punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (internal quotation mark omitted) (quoting In re Polk, 90 N.J. 550, 578 (1982)). Although we have "no power to act independently as an administrative tribunal," we may "alter a sanction imposed by an administrative agency . . . when necessary to bring the agency's action into conformity with its delegated authority." Id. at 28 (quoting Polk, 90 N.J. at 578). As to matters of statutory interpretation, our review is de novo. Russo, 206 N.J. at 27 (citing Toll Bros. v. Township of West Windsor, 173 N.J. 502, 549 (2002)).

A public officer or employee's "receipt of a public pension or retirement benefit is . . . expressly conditioned upon the rendering of honorable service." N.J.S.A. 43:1-3(a). Total or partial forfeiture may be ordered "for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable." N.J.S.A. 43:1-3(b).

Additionally, a public officer or employee

> who is convicted of any crime set forth in subsection b. of this section, or of a substantially similar offense under the laws of . . . the United States which would have been such a crime under the laws of this State,

A-5940-17T4

which crime or offense involves or touches such office, position or employment, <u>shall forfeit all of the pension or retirement benefit</u> earned as a member of any State or locally-administered pension fund or retirement system in which he [or she] participated at the time of the commission of the offense and which covered the office, position or employment involved in the offense.

[N.J.S.A. 43:1-3.1(a) (emphasis added).]

The crime or offense must have been "related directly to the person's performance in, or circumstances flowing from, the specific public office or employment held by the person." <u>Ibid.</u> The enumerated offenses in subsection (b) include "[N.J.S.A. 2C:27-10], acceptance or receipt of unlawful benefit by [a] public servant for official behavior." N.J.S.A. 43:1-3.1(b)(11).

In situations where total forfeiture is not required by N.J.S.A. 43:1-3.1, forfeiture may still be imposed in full or in part under N.J.S.A. 43:1-3(b). <u>Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 130 N.J. 539, 552 (1992); <u>see also</u> N.J.S.A. 43:1-3.1(e) ("Nothing in this section shall . . . preclude the . . . board of trustees . . . from ordering the forfeiture of all or part of the earned service credit or pension or retirement benefit of any member . . . for misconduct occurring during the member's public service pursuant to [N.J.S.A. 43:1-3], including in a case where the court does not enter an order of forfeiture pursuant to this section.").

We first address the Board's reliance on N.J.S.A. 43:1-3.1, requiring total forfeiture upon a member's commission of an enumerated offense. Vega concedes that the conduct for which he was convicted under 18 U.S.C. § 1951(a) also violates N.J.S.A. 2C:27-10. Thus, there is no question that the benefits he earned from his Jersey City employment were subject to total forfeiture. However, to determine whether total forfeiture of the Hudson County benefits was warranted, we consider whether our holding in Steele governs these factual circumstances.

In Steele, 420 N.J. Super. at 131-32, the defendant pled guilty to official misconduct that occurred while he was employed as a business administrator for the City of Irvington Board of Education. He was a member of the Teachers' Pension and Annuity Fund (TPAF), and he had almost twenty-nine years of service credited to TPAF, about thirteen of which were previously earned as a member of PERS. Id. at 132. Relevant to the current appeal, we considered whether N.J.S.A. 43:1-3.1 required Steele to forfeit his entire pension benefit, including the portion he earned through PERS, even though his misconduct was unrelated to his PERS membership. Id. at 135.

In construing the statute, we held that it "simply does not reach the benefit [Steele] earned as a member of PERS and elected to transfer to TPAF." Ibid. If

the Legislature intended the forfeiture of benefits earned through a different fund or system, "it could have achieved that goal by eliminating the qualifying and restrictive language and simply mandated forfeiture of all of the pension or retirement benefit earned as a member of any State or locally-administered pension fund or retirement system." Ibid. We added that our interpretation of the statute "avoid[s] [a] construction[] of statutory language that lead[s] to results that are absurd given the purpose of the statute." Id. at 136 (citing In re Tenure Hearing of Young, 202 N.J. 50, 69 (2010)). Ordering total forfeiture of Steele's benefits "would make the scope of forfeiture entirely dependent upon a personal decision of the officer or employee unrelated to his abuse of public employment or position." Ibid.

Although Steele involved two distinct retirement systems, we conclude that our reasons for reversing the total forfeiture of Steele's PERS benefits also warrant reversal of the total forfeiture of Vega's Hudson County PERS benefits. The statute requires categorically based forfeiture "of the pension or retirement benefit earned as a member of [the] pension fund or retirement system in which [the member] participated at the time of the commission of the offense and which covered the office, position or employment involved in the offense." N.J.S.A. 43:1-3.1(a) (emphasis added). We read this provision to mean that if a

member was convicted of an enumerated offense for conduct "involving" a specific office, position or employment, any benefit earned because of an unrelated (i.e., not "involved") office, position or employment, even within the same retirement system, is not subject to categorically based forfeiture under N.J.S.A. 43:1-3.1.

Our interpretation prevents a statutory construction that would lead to absurd results. See Young, 202 N.J. at 69. Were we to adopt the Board's interpretation of Steele, an employee like Steele, who was a member of two different retirement systems, would be permitted to retain some of the benefits he earned, while an employee like Vega, who was employed in two unrelated positions that happened to be covered by the same retirement system, would be indiscriminately required to forfeit all of the benefits he earned. As we explained in Steele, 420 N.J. Super. at 136, "an interpretation [that] would make the scope of forfeiture entirely dependent upon a personal decision of the officer or employee unrelated to his [misconduct]" would result in an absurd construction of the statute. While "forfeiture of all pension benefits might better further the Legislature's deterrent goal, . . . that is not what the statute says." Id. at 135.

A-5940-17T4

Having determined that N.J.S.A. 43:1-3.1 does not categorically mandate the total forfeiture of Vega's benefits earned through his Hudson County employment, we now consider whether forfeiture is warranted under N.J.S.A. 43:1-3. In determining whether a member's misconduct warrants forfeiture of earned benefits, the board of trustees is required to balance eleven factors:

> (1) the member's length of service;
>
> (2) the basis for retirement;
>
> (3) the extent to which the member's pension has vested;
>
> (4) the duties of the particular member;
>
> (5) the member's public employment history and record covered under the retirement system;
>
> (6) any other public employment or service;
>
> (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;
>
> (8) the relationship between the misconduct and the member's public duties;
>
> (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations;
>
> (10) the availability and adequacy of other penal sanctions; and

> (11) other personal circumstances relating to the member which bear upon the justness of forfeiture.
>
> [N.J.S.A. 43:1-3(c).]

See also Uricoli, 91 N.J. at 77-78. When we examine the Board's analysis of the Uricoli factors, we must keep in mind that we need not affirm a total forfeiture where it would shock one's sense of fairness. See Herrmann, 192 N.J. at 28-29.

In its initial denial of Vega's application for benefits, the Board made factual findings with respect to each of the Uricoli factors but concluded that because Vega had been convicted of a crime enumerated in N.J.S.A. 43:1-3.1(b), he was required to forfeit all benefits earned through PERS. The Board applied essentially the same analysis in reaching its final determination, and it does not appear to have engaged in a true balancing of the factors. Therefore, ordering total forfeiture of the benefits Vega earned from his Hudson County employment on a categorical basis was arbitrary and capricious, and it lacked fair support in the record. See Russo, 206 N.J. at 27.

Balancing the Uricoli factors is a task properly performed by the Board, and we may not act on its behalf. Accordingly, we vacate the Board's decision to the extent that it orders total forfeiture of the benefits Vega earned through his Hudson County employment. We remand for the Board to balance the

A-5940-17T4

Uricoli factors to determine whether all or any portion of the benefits Vega earned from his Hudson County employment should be forfeited.

To the extent we have not specifically addressed any remaining arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D), (E).

Vacated in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION